HETCHLER *v.* AMERICAN LIFE INSURANCE CO.

1. ESTOPPEL—DEFINITION.
   Estoppel arises when one by his acts, representations, or admissions, or silence when he should speak out, intentionally or through culpable negligence induces another to believe certain facts exist and rightfully rely thereon to his prejudice if the former is permitted to deny their existence.

2. INSURANCE—ESTOPPEL.
   Erroneous statement by insurer to insured that period of extended insurance under lapsed policy expired on date later than one on which insured died raises estoppel to deny liability arising within period so represented.

3. SAME—NEGLIGENCE IN COMPUTATION OF EXTENDED INSURANCE.
   Knowledge of the real facts must be imputed to insurer where error in computation of period of extended insurance resulted from its own negligence.

4. SAME—NEGLIGENCE IN DISCOVERY OF ERROR.
   Insured *held,* not negligent in not discovering impalpable error in computation of period of extended insurance under lapsed policy.

5. SAME—NONACTION OF INSURED—DETRIMENT—ESTOPPEL.
   Nonaction of insured to his detriment in reliance upon insurer's erroneous statement as to period of extended insurance estops latter from denying liability under policy arising within period so represented.

6. SAME — INFERENCES — NONACTION OF INSURED — RELIANCE UPON ERRONEOUS STATEMENT.
   Nonaction of insured in reliance upon insurer's erroneous statement as to period of extended insurance may be inferred from circumstances of the case and is inferred where, upon inquiry from insured over two years after policy had lapsed, the period of extended insurance was again erroneously stated and he permitted policy to continue rather than accept cash surrender value then offered.

Appeal from Genesee; Black (Edward D.), J. Submitted January 18, 1934. (Docket No. 137, Calendar No. 37,663.) Decided April 3, 1934.

Assumpsit by Nellie E. Hetchler against American Life Insurance Company, on a life insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Guy W. Selby,* for plaintiff.

*George E. Leonard* and *Harry F. Johnson* (*Fred H. Aldrich, Claris Adams* and *Wilbur M. Brucker,* of counsel), for defendant.

BUTZEL, J. In 1916, Clarence O. Hetchler of Flint, Michigan, took out a $12,000 20-year endowment insurance policy with the Northern Insurance Company, which later was merged with the American Life Insurance Company, defendant herein. The policy provided that in case of default in the payment of subsequent premiums after three annual premiums had been paid, assured would be entitled to certain surrender and loan values, paid-up insurance or extended insurance, in accordance with the number of annual premiums that had been paid. It was also provided that the policy might be reinstated at any time during the period of extended insurance, upon evidence of good health satisfactory to the company, and the payment of all arrearages. Hetchler borrowed $2,256.07 on his policy from defendant. After the policy had been in force for 10 years, he failed to pay the annual premium due on October 13, 1926. Thereupon the company sent

him the following letter, advising him of the lapse
of the policy, and that the balance of the then exist-
ing cash surrender value of the policy, after deduct-
ing the indebtedness against it, had been used to
purchase extended insurance:

"AMERICAN LIFE INSURANCE COMPANY
   "Detroit, Michigan.     November 29, 1926.
       "Copy
"Copy furnished to Albert Hetchler,
        by his request.
"Mr. CLARENCE O. HETCHLER,
"1401 Harrison street,
"Flint, Michigan.
"Dear Sir:
   "On account of your policy No. 12781 having
lapsed for non-payment of premium due October 13,
1926, it has become necessary for us to charge the
existing loan indebtedness of $2,256.07 against the
cash value of $3,079.40. The balance has been used
to buy insurance to May 13, 1932, until which date
you are protected under the extended insurance pro-
vision of the policy.
   "We trust you have not permitted this policy to
lapse because of any dissatisfaction with it, or with
the treatment accorded you by the company or any
of its representatives, and we will indeed be pleased
to have you take up with Mr. Odle, State manager
of our Flint, Michigan, branch office, the matter of
reinstatement of the contract.
           "Respectfully yours,
            "Assistant secretary
"AFR:MM        A. F. REINHARD."

The insured evidently relied upon the terms of
this letter and believed that he was protected until
May 13, 1932. In January, 1929, however, he wrote
the defendant in order to make certain as to the

status of his policy, and received the following reply:

"AMERICAN LIFE INSURANCE COMPANY
"Clarence L. Ayres, President
"Detroit
"Mr. CLARENCE O. HETCHLER,     January 22, 1929.
"1401 Harrison St.,                         '
"Flint, Mich.
*"Dear Sir:*
"This is in reply to your letter of January 18th relative to your policy #12781 which lapsed some time ago.

"The letters you have on file described the status of the policy at the time they were written. According to our records another letter was written under date of November 29, 1926, in which you were notified that the policy lapsed for non-payment of the premium that was due on October 13, 1926, and consequently the policy lapsed at that time with an indebtedness against it of $2,256.07 and that the policy would be carried under its extended insurance provision for five years seven months or to May 13, 1932. That is the present condition of your policy and you will notice that you will be protected for the full amount of the policy to that date.

"If you wish to discontinue the policy at this time, the surrender value is $564.50 which would be paid to you upon return of the inclosed surrender receipt signed by yourself and your beneficiary, and accompanied by your policy.

"Any other information that you would like to have will be gladly furnished.

"Yours very truly
"W. H. EKBERG,
"WHE*SK                    Assistant secretary."

Hetchler did not elect to take the $564.50 offered, but permitted the policy to continue for the extended term, obviously relying upon the assurance of the company, expressed in this letter, that he was pro-

tected until May 13, 1932. He died on April 13, 1932, and upon defendant's refusal to pay the amount due under the policy, Nellie E. Hetchler, the widow and beneficiary, brought suit to recover $8,650, the amount due on the policy.

The defendant claims that after the demand for payment was made on behalf of the beneficiary, the company rechecked its records, as was its custom upon receipt of notice of death of the insured on any policy running under extended insurance; that it was then discovered that the company had made a mistake in computing the period of extended insurance, and that it had actually expired on March 15, 1932, 29 days prior to the death of the insured, rather than on May 13th, as stated in the letters; that the policy had therefore lapsed prior to the date of Mr. Hetchler's death, and the company was not subject to any liability thereunder. Defendant does not claim that there was any fraud on the part of the insured or plaintiff, or that either of them was in any way responsible for the alleged error or had any knowledge thereof. Two actuaries and a professor of mathematics at the University of Michigan testified that the period of extended insurance, if properly computed, would have expired on March 15, 1932, as claimed by the company.

The trial judge held that the defendant was estopped from denying liability on the policy, on the ground that the insured had relied upon the statements of the company to his detriment. Judgment was rendered in plaintiff's favor for $12,000, payable in instalments of $50 per month for 20 years, or 240 months, as had previously been elected by the insured in place of the lump sum of $8,650 in cash, according to the terms of the policy.

The sole question on appeal is whether the company is estopped from denying its liability under the circumstances.

"It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Kole* v. *Lampen,* 191 Mich. 156.

The fact that the representations of the company here relied upon were not made fraudulently, but were due solely to a mistake in computation, does not operate to prevent the raising of an estoppel. It is commonly held that although the party making the representations was ignorant or mistaken as to the real facts, if he was in such a position that he ought to have known them, ignorance or mistake will not prevent an estoppel. 2 Pomeroy's Equity Jurisprudence (4th Ed.), § 809; 10 R. C. L. p. 695; *Westerman* v. *Corder,* 86 Kan. 239 (119 Pac. 868, 39 L. R. A. [N. S.] 500; Ann. Cas. 1913 C, 60); *Ward* v. *Cameron* (Tex. Civ. App.), 76 S. W. 240. In the instant case defendant had all the facts and figures before it from the time of the first letter to the insured until his death, almost six years later. Under the circumstances, the error was the result of defendant's own negligence, and knowledge of the real facts must be imputed to the company.

It cannot be said that the insured was negligent in not discovering the error, or that he was charged with knowledge as to the time when his policy could expire. He had a right to rely on defendant's statements in the two letters written to him by the com-

pany. It is well-nigh impossible for the ordinary layman to understand the intricacies of actuarial accounting. The insurance company itself even deemed it necessary to have its figures checked by a university professor. The alleged mistake is not a palpable one that could be easily discovered.

The only remaining question is whether the insured relied to his detriment upon the statements erroneously made by the defendant. It is not necessary that affirmative action be taken in reliance on the representations so made. Nonaction in reliance thereon, resulting in injury, is sufficient. 2 Pomeroy's Equity Jurisprudence (4th Ed.), § 812:

"Although this action is usually affirmative, yet such affirmative action is not indispensable. It is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss."

Bigelow on Estoppel (5th Ed.), p. 645; *Voorhis* v. *Olmstead,* 66 N. Y. 113; *Stewart* v. *Glade Mill Mutual Fire Ins. Co.,* 41 Pa. Sup. Ct. 472. The conduct of the defendant in the instant case induced the insured to rest satisfied with his policy up to the time of his death, in the justifiable belief that he was protected until May 13, 1932. Had he been correctly notified that his policy would expire on March 15, 1932, as now claimed by the company, Hetchler might have made an effort either to have the insurance reinstated in accordance with the terms of the policy, or to secure some other protection or make other provision for his widow. The fact that his failure to take any such action was induced by reliance upon the representations of the defendant need not be proved by direct evidence, but may be inferred from the circumstances. *Ste. Marie*

v. *Wells,* 93 Vt. 398 (108 Atl. 270); *Ward* v. *Cameron, supra; Steele* v. *St. Louis Mutual Life Ins. Co.,* 3 Mo. App. 207. In the present case it is impossible to produce any direct testimony as to what was in the mind of the insured. His mouth is sealed by death. The question of reliance can, therefore, be determined only by an examination of the circumstances. It is undisputed that three years after the receipt of the first letter from the company, assuring him that he was protected until May 13, 1932, the insured wrote to the defendant, inquiring as to the status of his policy. This is strongly indicative that he was relying upon the information given him by the company, and was regulating his conduct accordingly. In reply the defendant again assured him that he was protected until May 13, 1932, but offered him as an alternative the surrender value of $564.50, upon his return of the policy. Hetchler did not avail himself of this right, but instead permitted the policy to continue, in the belief that it would not expire until May 13, 1932.

Defendant cites as authority for its position the case of *Kimball* v. *New York Life Ins. Co.,* 96 Vt. 19 (116 Atl. 119), 98 Vt. 192 (126 Atl. 553). Even were we to subscribe to the rule laid down in that decision, its facts are distinguishable from those in the case at bar. In the Vermont case no inquiry was made by the insured as to the status of his policy at any time after the representation of the company as to the date of expiration of the extended insurance, nor was such representation repeated by the insurer accompanied by an option to the insured to accept a cash settlement in lieu of the extended insurance.

In view of the facts appearing in the instant case, we agree with the trial judge that the insured re-

frained from taking any action to protect his rights in reliance upon the letters of the defendant, and that the defendant is thereby estopped from denying liability.

The judgment of the lower court is affirmed, with costs to plaintiff.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.